IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-137-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, ON BEHALF OF FARM SERVICE AGENCY, UNITED STATES DEPARTMENT OF AGRICULTURE, Plaintiff, v. HARVEY FERTILIZER AND GAS CO., Defendants. | ORDER |

This matter is before the Court on the parties' cross-motions for summary judgment. These cross-motions arise from a priority dispute between two secured creditors over liquidation sale proceeds. Both parties moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that there are no genuine disputes as to any material facts and plaintiff is entitled to judgment as a matter of law. For the reasons stated herein, plaintiff's motion is GRANTED and defendant's motion is DENIED.

BACKGROUND

This action arises from a dispute between plaintiff, acting on behalf of the United States Department of Agriculture's Farm Service Agency, and defendant Harvey Fertilizer and Gas Company over the priority of plaintiff's lien as to the proceeds of a liquidation sale. On April 28, 2008, plaintiff entered into a security agreement ("USDA security agreement") with Walker Farms Partnership ("Walker Farms"). The security agreement was executed on April 28, 2008 by Gideon Ray Walker and Gideon Ray Walker, Jr. on behalf of the partnership. Included on the signature page of the agreement was the following certification: "*I certify that the information*

1

signature page of the agreement was the following certification: "*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*" [DE 20-1](emphasis in original). The USDA security agreement listed Walker Farms' address as "654 NE CHURCH RD, MOUNT OLIVE, NC 28365-8654." The agreement also included financial disclosures and detailed descriptions of the collateral, which included real estate and certain farm equipment. The USDA's security interest extended to all farm equipment and the agreement listed Walker Farms' equipment, without limitation, as follows:

| Quantity | Kind | Manufacturer |
|---|---|---|
| 1 | Tobacco Harvestor | Roanoke |
| 1 | Tractor | John Deere |
| 1 | Tractor | John Deere |
| 1 | Tractor | John Deere |
| 1 | Tractor | John Deere |
| 1 | Grain Combine | John Deere |
| 2 | Corn Heads | John Deere |
| 2 | Disk Harrows | John Deere |
| 2 | Bedders | House |
| 1 | Planter | John Deere |
| 2 | Tobacco plows | KMC |
| 2 | cultivators | John Deere |
| 8 | Tobacco Trailer | Roanoke |
| 1 | Tobacco Bailer | Sheppard |
| 1 | Tobacco Setter | Holland |
| 2 | Bush Hog | Hardee |
| 1 | Hay Boom | John Deere |
| 1 | Box Loader | Long |
| 1 | Seeder | manual |
| 1 | Tank | Green Charge |
| 5 | Tobacco Barns | General |
| 1 | Green House | Transplant |
| 3 | Sprayer | Sheppard |
|   | Water | Sheppard |

2

[DE 20-1] Additionally, Walker Farms provided financial disclosures, which included a handwritten list of farm property that contained descriptions of several farm vehicles. [DE 20-3] The USDA security agreement also included an after acquired property clause. Further, the security agreement required the debtor to obtain permission before selling or disposing of any of the collateral.

On April 28, 2008, a UCC financing statement evidencing this security agreement was filed with the North Carolina Secretary of State. The financing statement identified the debtor as "Walker Farms Partnership." The financing statement listed "farm products, equipment, certificates of title, goods, supplies, inventory, [and] accounts," among other things, as the covered collateral. The financing statement also noted that the "security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause." Since the security agreement was executed the debtor has not notified the plaintiff of any changes in the ownership of the collateral or its balance sheet. [DE 20].

Defendant Harvey Fertilizer entered into a security agreement with Walker Farms Partnership, Ray Walker, Jr., and Geneva B. Walker on May 1, 2009. That agreement lists the address of the debtors as 286 Farmer's Road in Mount Olive, North Carolina. The agreement identifies the collateral as "[a]ll equipment and motor vehicles owned by the borrower, including all accessories and additions thereto, whether now owned or hereafter acquired." Defendant filed a financing statement with the North Carolina Secretary of State on May 1, 2009.

On March 3, 2010, Iron Horse Auction Company conducted a liquidation sale of Walker Farms' property. The seller of the property was listed as "WALKER FARMS 654 NE CHURCH ROAD MT. OLIVE NC 28365." As discussed below, many of the items sold at auction match items specifically listed in the security agreement between plaintiff and Walker Farms.

3

The plaintiff now seeks relief in the form of a declaratory judgment that its lien has priority over the defendant's lien with respect to the proceeds of the liquidation sale. As it is undisputed that the plaintiff's financing statement was the first to be filed, the crux of this dispute is which debtor actually owned the collateral. Because the plaintiff's only named Walker Farms as the debtor in its financing statement it has only perfected its security interest as to collateral owned by the partnership. Any collateral owned by the individuals falls outside the scope of the plaintiff's financing statement. For the reasons discussed below, the Court grants summary judgment in favor of the plaintiff on this issue.

## DISCUSSION

Federal Rule of Civil Procedure 56 sets out the standard to be met by a party seeking summary judgment. *See* Fed. R. Civ. P. 56. Rule 56 provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. As such, summary judgment should be granted only where the evidence presented is such that the moving party would be entitled to a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party bears the initial burden to show the court that there is no genuine issue concerning any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to survive the motion, the non-moving party must then show that there is "evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S., at 257. Furthermore, the Court must accept all of the non-moving party's evidence as true and must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 255.

This particular dispute is grounded in the conflict between the parties over their potentially competing security interests. In North Carolina, secured transactions - such as the

4

transactions at issue here - are governed by the UCC. *See* N.C.G.S. § 25-1-101 *et seq.* (2005). A security interest is an interest in property that secures payment of an obligation. *See* N.C.G.S. § 25-1-201(37). "Perfection" of this interest secures a creditor's position with respect to other creditors. In order to perfect a security interest in equipment, the type of collateral at issue in this matter, a creditor must file a financing statement with the Secretary of State. N.C.G.S. § 25-9-308(a). If a security interest in the collateral is perfected, then a security interested in any identifiable proceeds from that sale or transfer of that collateral is also perfected. N.C.G.S. § 25-9-315(c). An interest may also remain in the transferred property. Pursuant to N.C.G.S. § 25-9-325, "a security interest created by a debtor is subordinate to a security interest in the same collateral created by another person if: (1) the debtor acquired the collateral subject to the security interest created by the other person; (2) The security interest created by the other person was perfected when the debtor acquired the collateral; and (3) There is no period thereafter when the security interest is unperfected."[1]

Regarding competing security interests, the UCC states in pertinent part:

> (a) . . . Except as otherwise provided in this section, priority among conflicting security interests . . . in the same collateral is determined according to the following rules:
> (1) Conflicting perfected security interests . . . rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest . . . is first perfected, if there is no period thereafter when there is neither filing nor perfection.

---

[1] The comments to § 9-325 of the UCC include the following example:
> Example 1: A owns an item of equipment subject to a perfected security interest in favor of SP-A. A sells the equipment to B, not in the ordinary course of business. B acquires its interest subject to AP-A's security interest. Under this section, if B creates a security interest in the equipment in favor of SP-B, SP-B's security interest is subordinate to SP-A's security interest, even if SP-B filed against B before SP-A filed against A, and even if SP-B took a purchase-money security interest. Normally, SP_B could have investigated the source of the equipment and discovered SP-A's filing before making an advance against the equipment, whereas SP-A had no reason to search the filings against someone other than its debtor A.

UCC § 9-325, cmt.3.

5

N.C.G.S. § 25-9-322. The filing referenced in this statute is often referred to as the UCC-1 financing statement. As noted above, such a financing statement, which identifies the debtor and the collateral must be filed in order to perfect a security interest in certain collateral. *See Rentenbach Constructors, Inc. v. CM Partnership*, 181 N.C.App. 268 (2007)(quoting *In re Environmental Aspecs, Inc.*, 235 B.R. 378, 385 (E.D.N.C. 1999); *see also* N.C.G.S. § 25-9-303. The perfection awarded upon the filing of a financing statement only extends to the debtor(s) actually listed and not to debtor's whose names do not appear on the financing statement. Reading § 9-322 and § 9-303 together the apparent priority rule is that priority is awarded to the first creditor to file a sufficient financing statement.

The plaintiffs have offered significant evidence to show that the property which would later be sold at the Iron Horse auction was owned by Walker Farms at the time it entered into a security agreement with the USDA. First, to understand how the property moved from the partnership to the auction following the creation of the USDA's security interest, the Court evaluated the items identified in the security agreement, and associated financial disclosures, that later sold at the liquidation sale:

| Quantity | Kind | Manufacturer | Item No. at Auction | Sale Price at Auction |
|---|---|---|---|---|
| 1 | Tractor | John Deere | | |
| 2 | Tobacco plows | KMC | | |
| 1 | Seeder | manual | | |
| 1 | Water | Sheppard | | |
| 1 | Planter | John Deere | 117 | $900.00 |
| 2 | Disk Harrows | John Deere | 120 | $850.00 |
| | | | 206 | $1,500.00 |
| 1 | Tobacco Setter | Holland | 122 | $225.00 |
| 1 | Tobacco Harvestor | Roanoke | 124 | $300.00 |
| 8 | Tobacco Trailer | Roanoke | 133 | $120.00 (6) |
| 1 | Tobacco Bailer | Sheppard | 208 | $3,400.00 |
| 1 | Hay Boom | John Deere | 209 | $275.00 |

6

| 2 | Bedders | Howse | 212 | $700.00 |
| --- | --- | --- | --- | --- |
|   |   |   | 213 | $200.00 |
| 3 | Sprayer | Sheppard | 219 | $650.00 |
|   |   |   | 220 | $150.00 |
| 2 | cultivators | John Deere | 222 | $125.00 |
|   |   |   | 224 | $125.00 |
| 2 | Bush Hog | Hardee | 225 | $150.00 |
|   |   |   | 226 | $250.00 |
| 1 | Farm Vehicle 3500 GMC 1-ton | GMC | 412 | $400.00 |
| 1 | Tank | Green Charge | 477 | $2,500 |
| 1 | Grain Combine | John Deere | 508 | $1,800.00 |
| 2 | Corn Heads | John Deere | 509 | $900.00 |
| 1 | Tractor | John Deere | 522 | $5,200.00 |
| 1 | Tractor | John Deere | 523 | $4,200.00 |
| 1 | Tractor | John Deere | 528 | $14,000.00 |
| 1 | Green House | Transplant | 600 | $1,200.00 |
| 5 | Tobacco Barns | General | 601 | $400.00 |
|   |   |   | 602 | $400.00 |
|   |   |   | 603 | $400.00 |
|   |   |   | 604 | $400.00 |
|   |   |   | 605 | $400.00 |
| 1 | Box Loader | Long | 606 | $50.00 |

In addition to this tracing of property[1], the defendants have conceded that some of this property was in fact owned by Walker Farms. Finally, the auction invoice lists the seller as "Walker Farms" and provides the same address as that listed in the USDA security agreement, but a different address than that listed in the defendant's security agreement.

The defendant attempts to counter the plaintiff's evidence of Walker Farms' ownership by proffering Ray Walker, Jr.'s affidavit stating that Walker Farms never owned the majority of the equipment sold at auction. In *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970 (4th Cir. 1990) the Fourth Circuit found that the district court had properly disregarded an affidavit when

---

[1] The filing of a finance statement under the UCC is intended to provide notice of possible competing security interests to future creditors. Had the defendant completed a proper financing statement search they would have been aware of the plaintiff's security agreement with Walker Farms and could have inquired as to the extent of this agreement. While the Court does not suggest that defendant's actual notice of the plaintiff's security interest confers priority on the original creditor, the defendant should not have been surprised by USDA's competing interest.

7

the affiant had made prior conflicting statements such that the later affidavit should be regarded as a sham. In *Clem v. Corbeau*, 284 F.3d 543, 548 n.1 (4th Cir. 2002) the Fourth Circuit further acknowledged that where there is a conflict between an affidavit and a prior sworn statement that affidavit may be struck. Although these cases have focused on the conflict between an affidavit and prior deposition testimony the rule is not limited to such a situation. *See Goodwyn v. Siemens Dematic Corp.*, 2004 WL 6039455 (E.D.N.C. 2004). The instant affidavit conflicts with the statements and financial disclosures of Ray Walker, Jr. made in conjunction with the security agreement. The prior statements were made under the threat of criminal penalty and are the type of statement contemplated by *Rohrbough*. Mr. Walker's affidavit lacks the detail necessary to show its credibility in spite of his prior financial disclosures to the USDA. Because Mr. Walker's affidavit is conclusory and irreconcilable with his statements made in conjunction with the security agreement the Court disregards it.

Given the tracing of property laid out above, the signed financial disclosures, the defendant's concessions, and the auction receipt identification of Walker Farms as the seller, the Court finds that Walker Farms was the owner of the collateral at issue. Because the plaintiff named Walker Farms in its financing statement it holds a perfected security interest in that collateral. For the following reasons the plaintiff holds a *superior* security interest in the property. The Court finds that Walker Farms' equipment securing its agreement with the USDA either remained partnership property until the time of the auction or was transferred to individual partners at some point after the USDA security agreement was executed.[2] Regardless of the possible transfer, the defendant's security interest is subordinate to the plaintiff's. Under the former scenario, the partnership owned the property at the time of the auction and the plaintiff's security interest is superior because it was the first to file its financing statement pursuant to

---

[2] It is clear that any such transfer would have been in violation of the security agreement.

8

N.C.G.S. § 25-9-322. Under the latter scenario, the property once owned by Walker Farms was transferred to the individuals after the USDA security agreement was executed. In that unlikely circumstance, the property was actually transferred, but that transfer was subject to the original creditor's, in this case the USDA's, security interest pursuant to § 9-325. As such, the plaintiff's security interest in the collateral at issue is superior to the defendant's interest. The plaintiff having shown that they are entitled to judgment and the defendant having failed to present evidence from which a jury might render a verdict in its favor, summary judgment on this issue in favor of the plaintiff is proper.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is GRANTED, the defendant's motion is DENIED and the clerk is DIRECTED to close the file.

SO ORDERED, this __11__ day of March, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9

Case 4:11-cv-00137-BO   Document 27   Filed 03/12/13   Page 9 of 9